**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CODY OLACHEA,**

        **Plaintiff,**

**vs.**                                            **Case No. _____**

**CITY OF FARMINGTON, NEW MEXICO, TYLER W. BROWN,** formerly a law enforcement officer employed by Defendant Farmington Police Dept., a subsidiary of the City of Farmington, **JASON COX**, a law enforcement officer employed by Defendant Farmington Police Dept., a subsidiary of the City of Farmington, and **DANIEL ANGLIN**, an employee of the City of Farmington tasked with the repair and maintenance of the Traffic Signal Located at E. Main St. and N. Butler Ave., Farmington, New Mexico**,**

        **Defendants.**

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND
VIOLATIONS OF THE NEW MEXICO TORT CLAIMS ACT**

       Plaintiff Cody Olachea, through counsel AEQUITAS LAW (Anna C. Martinez) for his

claims against the City of Farmington, New Mexico, Tyler W. Brown, and Charging Officer,

states as follows:

**PARTIES, JURISDICTION, AND VENUE**

     1.     Plaintiff  Cody Olachea is a resident of the State of New Mexico.

     2.     Defendant  City of Farmington (hereinafter referred to as "Defendant Farmington"), is

a "governmental entity" and/or a "local public body" as those terms are defined in the New Mexico

Tort Claims Act, NMSA 1978 § 41-4-3(B) and (C).

     3.     Defendant Farmington was created pursuant to NMSA 1978, § 3-2-1, *et seq*. As

such, it can sue or be sued in its own name.

4.      Defendant Farmington is sued under 42 U.S.C. § 1983 for damages under a theory of municipal liability for failure to adequately train supervise Defendants Tyler W. Brown, Jason Cox, and/or Daniel Anglin.

5.      Defendant Farmington is also sued under 42 U.S.C. § 1983 for damages as a result of its own unconstitutional for customs, policies, and/or practices—including both official customs, policies, and/or practices and *de facto* customs, policies, and/or practices.

6.      Defendant Farmington is sued under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*., for damages under a theory of *respondeat superior*.

7.      At all times material to this Complaint, Defendant Tyler W. Brown (hereinafter referred to as "Defendant Brown") was a law enforcement officer employed by Defendant Farmington. Defendant Brown was employed by Defendant Farmington' subsidiary, Farmington Police Department.

8.      At all times material to this Complaint, Defendant Brown was a law enforcement officer acting within the scope and course of his employment and under color of state law within the meaning of 42 U.S.C. § 1983 and NMSA 1978, § 41-4-12 and, consequently, immunity is waived for the actions described herein.

9.      In addition, Plaintiff's action alleges that Defendant Brown was negligent in the operation of a motor vehicle. Pursuant to NMSA 1978, § 41-4-5, the immunity from suit granted by the Tort Claims Act "does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft."

10.     At all times material to this Complaint, Defendant Jason Cox (hereinafter referred to as "Defendant Cox") was a law enforcement officer employed by Defendant Farmington. Defendant Cox was employed by Defendant Farmington' subsidiary, Farmington Police Department.

11.     At all times material to this Complaint, Defendant Cox was a law enforcement officer acting within the scope and course of his employment and under color of state law within the meaning of 42 U.S.C. § 1983 and NMSA § 41-4-12 and, consequently, immunity is waived for the actions described herein.

12.     At all times material to this Complaint, Defendant Daniel Anglin (hereinafter referred to as "Defendant Anglin") was employed by Defendant Farmington. Defendant Anglin was employed by Defendant Farmington to maintain and repair, among other traffic signals and lights, the traffic controls at the intersection at which Plaintiff was injured, to wit: N. Butler Ave. meets E. Main Street.

13.     At all times material to this Complaint, On the date of this collision, Defendant Anglin was employed as the lead traffic technician for Defendant City of Farmington.

14.     The Supreme Court of New Mexico held that the decision by an the authority in charge of managing a roadway not to take sufficient remedial steps to correct a known danger in that roadway, after being alerted of a potentially dangerous condition at that general location, constitutes "maintenance," for which statutory immunity from suit is waived pursuant to NMSA 1978, § 41-4-11. *Martinez v. N.M. DOT*, 2013-NMSC-005, ¶1, 296 P.3d 468, 469.

15.     As a result, immunity is waived for Defendant Anglin's actions, as described herein, in that, upon information and belief, as the official responsible for managing the traffic signal at the intersection located at E. Main and N. Butler in Farmington, NM he failed to correct

a dangerous situation arising from the driving behavior of people, generally, and police officers, including Defendant Brown, specifically.

16.     As a result of the fact that Defendant Anglin set the traffic control devices for north- and southbound traffic lanes to "max recall" or "always on" the people in Farmington and police officers knew that they could speed through the intersection that is the subject of this case.

17.     This action arises under the laws of the United States and the State of New Mexico, including but not limited to, 42 U.S.C. § 1983, the New Mexico Tort Claims Act, NMSA § 41-4-1, *et seq*., and New Mexico common law.

18.     All of the acts and practices giving rise to the instant action occurred within Farmington, County of San Juan, New Mexico, and venue is proper within the District of New Mexico.

19.     This Court has original federal question jurisdiction under the Constitution and laws of the United States of America pursuant to 28 U.S.C. §§ 1331, 1342(a)(3).

20.     The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, in that the state claims share a common nucleus of operative facts with the federal claims alleged herein and the issues and facts in both the federal law claims and the state law claims substantially overlap each other.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **FACTUAL BACKGROUND**

***The Catastrophic Collision that Caused Plaintiff's Harm—and Nearly Killed Plaintiff's Friend and Passenger Resulted from Dangerous and Unlawful Acts Perpetrated by Two Different City Actors.***

22.      On or about December 12, 2012, at approximately 3:42 a.m., Plaintiff Cody Olachea was driving his 1999 Mitsubishi Eclipse northbound on N. Butler Avenue approaching

the intersection where N. Butler Ave. meets E. Main St.

23.     As Plaintiff approached the Plaintiff's friend Deseree Trujillo was seated next to him in the passenger seat of Plaintiff's car. A map of the intersection in question is seen in *Figure 1*, below.



*Figure 1*: **Intersection of E. Main St. and N. Butler Ave., Farmington, NM 87401**

24.     As Plaintiff entered the intersection of Butler Avenue and East Main Street, his vehicle was suddenly struck with tremendous force, on the passenger's side, by a police vehicle.

25.     That police car was being driven by Defendant Brown.

26.     At all times relevant to this Complaint, the motor vehicle that Defendant Brown was operating was owned by Defendant City of Farmington.

27.     Defendant Brown was heading west.

28.     At the time that he entered the intersection, Defendant Brown was speeding—he was traveling approximately 51 miles an hour in a 30 mile per hour zone.

29.     The speed that Defendant Brown was traveling was verified by a forensic examination of the event data recorder in Defendant Brown's police cruiser.

30.     At the time of the collision, Defendant Brown was on duty as an officer employed by Defendant Farmington Police Department at the time of the wreck.

31.     However, Defendant Brown was not responding to an emergency call.

32.     Defendant Brown had not activated his lights or sirens.

33.     There was no legal justification for Defendant's Brown's excessive speed.

34.     The wreck destroyed Plaintiff's car.

35.     Plaintiff's car was struck with such violent force that it was ejected into the parking lot of a nearby business.

36.     Plaintiff's car was struck with such violent force that it shattered nearly the entire right side his friend and passenger Deseree Trujillo's body.

37.     Upon information and belief, Ms. Trujillo suffered critical, life threatening injuries including, but not limited to:  a fractured skull, fractured face, fractured sternum, fractured pelvis, broken ankles, and torn liver, for which she is still receiving medical treatment.

38.     Upon information and belief, as a result of the crash, Plaintiff suffered head injuries and a broken arm.

39.     Both Plaintiff and Ms. Trujillo were rendered unconscious in the crash.

40.     Plaintiff's vehicle was so badly damaged that emergency personnel had to cut off the top half of the vehicle's cab to extract Plaintiff and Ms. Trujillo from the vehicle.

41.     Defendant Brown initially claimed that he was the victim of a hit-and-run driver.

42.     Defendant Brown was not the victim of a hit-and-run driver.

43.     Plaintiff did not strike Defendant Brown's vehicle.

44.     Defendant Brown's vehicle struck Plaintiff's vehicle.

45.     Instead, Defendant had struck Plaintiff's vehicle so hard that it was ejected

through the intersection, up and over a curb, and either through or over bushes into an adjacent parking lot.

46.     In the immediate after math of the collision, Defendant Brown activated his lights and sirens, which, upon information and belief, automatically engaged the dash cam.

47.     The video from the dash-cam confirms that the collision had thrown Plaintiff's car so far that it was not visible to Defendant Brown when he called the collision in to his dispatcher.

48.     When Defendant Brown initially spoke to the dispatcher

49.     As Defendant Brown entered the intersection, he did not see Plaintiff's vehicle neither entering nor traveling in his path through the intersection.

50.     Upon information and belief, Defendant Brown did not see that Plaintiff's vehicle was approaching the intersection because Defendant Brown was not looking where he was going.

51.     Upon information and belief, Defendant Brown never took any evasive action in any attempt to avoid the collision.

52.     Upon information and belief, the injuries Defendant Brown suffered in the crash indicate that, at the time the airbag was deployed, Brown was not looking forward, but rather downward and to the right.

53.     Forensic examination of the event data recorder in Defendant Brown's police cruiser verified that Defendant Brown never took any evasive action in any attempt to avoid the collision.

54.     Defendant Brown's failure to take any evasive action violates the doctrine of "Last Clear Chance," the duty that is recognized in New Mexico jurisprudence requiring a driver to pay attention to his or her surroundings and to attempt to avoid a collision even if that driver had the legal right away.

55.     In order words, New Mexico recognizes that all drivers have a duty of ordinary care to use due diligence to avoid motor vehicle collisions.

56.     In addition to violating his obligations to the safety of the general public, Defendant Brown's failure to take any evasive action indicates that he was not looking where he was going.

57.     The intersection in question allows any approaching driver to see in all directions for a substantial distance.

58.     Upon information and belief, if Defendant Brown had been looking where he was going, he would have seen the headlights of Plaintiff's approaching vehicle.

59.     If Defendant Brown had seen Plaintiff's vehicle approaching, Defendant could likely  have avoided the collision giving rise to this Complaint.

***Farmington's Unlawful and Unsafe Decision to Leave the Traffic Light Always Green in One Direction Caused, in Part or in Whole, this Tragic Collision.***

60.     As Defendant Brown entered the intersection, the traffic light on East Main Street was in "rest mode."

61.     When the traffic light at this intersection on East Main Street is in "hold rest," the light is held in rest mode, remaining green until a vehicle approaches traveling either north or south bound on Butler Avenue, triggering a sensor which turns the light from green to red on Butler Avenue in approximately 3 – 5.5 seconds.

62.     On the date of this collision, Defendant City of Farmington had exclusive maintenance responsibility for the traffic lights at East Main Street and Butler Avenue.

63.     As Defendant Brown entered the intersection, he knew that the traffic light on East Main Street was in "rest mode," meaning that it would stay green, indefinitely, unless a) a vehicle traveling north or south at the intersection reached the intersection, and stopped over the magnetic

sensor causing the light to cycle or b) one or more pedestrians attempting to cross the street pressed the crosswalk button.

64.     Upon information and belief, as Plaintiff approached the intersection, Plaintiff's direction of travel had the right of way to pass through the, on Butler Avenue, because one of two pedestrians waiting to cross the road had pressed the crosswalk button.

65.     As a result, upon information and belief, immediately before the collision, the signal was actually red in the direction that Defendant Brown Plaintiff Cody Olachea entered the intersection, the light was green on Butler Avenue.

66.     As a result, upon information and belief, as Plaintiff Cody Olachea entered the intersection, the light was green on Butler Avenue.

67.     Upon information and belief the individuals who were waiting to cross the intersection informed another citizen of Farmington, NM that they were present when the collision occurred and that they had activated the crosswalk, which had caused the light to cycle green in the direction of travel that Mr. Olachea was driving down.

68.     Furthermore and upon information and belief, the two witnesses at the scene of the collision related to one or more people that the reason that the witnesses were conscientious about using the crosswalk button to cycle the light at the intersection of Butler and Main when crossing late at night resulted from the witnesses' fear of being struck by one of the police officers who "hauled ass" (or words to similar effect) through this intersection.

69.     At the time of the collision, it was the duty of Defendant

***Brown was a Dangerous Driver***

70.     Upon information and belief, Defendant Brown has a history of traffic and motor vehicle infractions, including but not limited to: driving on a suspended or revoked license, driving

without insurance, and driving an unregistered vehicle.

71.     At the time of the collision, Officer Brown was racing toward the intersection without apparently paying any attention to his surroundings—which prevented him from taking any evasive action.

***Upon information and belief, the Claim that Plaintiff Ran a Red-light is Untrue – but, even if it was True, the Collision would not have Occurred if a) Defendant Brown had not been Driving at a Dangerous and Reckless Speed; b) Defendant Brown had been Looking where He was Going; <u>or</u> Farmington had not made the Decision to Decision to Set the Light at an Intersection to Continuously Remain Green in One Direction at All Times.***

72.     Upon information and belief it was well-known by Defendant Brown and other Farmington Police Officers that the light at the intersection of Butler and Main was set to remain green one direction (as well as to remain red the other).

73.     The lights were set to remain green for all east- and westbound traffic.

74.     Upon information and belief, the light at the time of the incident giving rise to this case would always remain green in the direction that Defendant Brown was traveling in the early morning hours of December 12, 2012 **<u>unless</u>** one of two events occurred.

75.     First, the light would cycle if another vehicle pulled up to the intersection from the northbound or southbound and stopped at the intersection.

76.     Second, the lights would cycle if a pedestrian pressed the crosswalk button.

77.     Upon information and belief a pedestrian had pressed the crosswalk button just before Plaintiff approached the intersection, causing the lights to cycle.

78.     Upon information and belief Defendant Brown assumed the light would be green in his direction of travel and therefore was not looking forward or paying attention to his surroundings before he collided with Plaintiff.

*Rather than Face the Consequences of his Bad Acts, Defendant Brown Tried to Cover Up his Dangerous Driving. Defendant Brown and/or Defendant's Fellow Officers, including but not limited to Defendant Cox, Attempted to Cover Up Brown's Bad Acts by Trying to Hide Evidence and by Charging Plaintiff with a Crime that He Did Not Commit.*

79.     Upon information and belief, Defendant and/or other members of Defendant Farmington Police Dept. and/or other employees of the City of Farmington took steps that were designed to prevent the discovery of evidence demonstrating that Defendant Brown was operating his vehicle more than twenty (20) miles per hour in excess of the speed limit.

1.      Upon information and belief, absent the efforts of the attorney and/or investigators and employees of the attorney representing Plaintiff's friend, Deseree Trujillo, the evidence proving that Defendant Brown was speeding would have been destroyed.

2.      Upon information and belief, Defendant Brown falsely claimed that he did in fact take evasive action.

3.      If the evidence in Defendant Brown's event data recorder had been destroyed, Plaintiff may not have been able to disprove this false claim.

## COUNT 1– NEGLIGENCE IN THE OPERATION OF A MOTOR VEHICLE BY DEFENDANT BROWN AND *RESPONDEAT SUPERIOR* LIABILITY
### (Pursuant to New Mexico Tort Claims Act)

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

4.      Defendant Brown owed a duty of ordinary care to members of the general public, including Plaintiff, to drive his police car in a safe manner.

5.      Defendant Brown breached his duty by: driving too fast for conditions and in excess of the posted speed limit, failing to pay attention to traffic; failing to stop at a red light, failing to keep a proper lookout, and failing to take reasonable steps available to him in order to avoid the collision. The foregoing conduct constitutes negligence.

6.      As a direct and proximate result of Defendant Brown's negligent acts and omissions, as set forth herein, Plaintiff sustained damages, including: bodily injury, pain and suffering, medical expenses, lost enjoyment of life, severe emotional distress, and/or other damages to be proven at trial.

7.      At all times material to this Complaint, there were no adverse weather or atmospheric conditions that may have and/or did contribute to the collision described herein.

8.      Defendant Farmington is liable for damages to Plaintiff pursuant to NMSA 1978, § 41-4-4, *et seq*., for all damages awarded for the wrongful acts and omissions of its employees, including Defendant Brown.

## COUNT 2 – NEGLIGENCE *PER SE* IN THE OPERATION OF A MOTOR VEHICLE BY DEFENDANT BROWN AND *RESPONDEAT SUPERIOR* LIABILITY
### (Pursuant to New Mexico Tort Claims Act)

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

9.      There was in force and effect on the date of the accident certain statutes and ordinances governing the operation of motor vehicles, which were enacted for the benefit and protection of the class of persons to which Plaintiff belonged at the time of the accident, to wit: drivers of motor vehicles, which statutes and ordinances Defendant Brown violated, proximately resulting in Plaintiff's injuries and damages.

10.     The statutes and ordinances that Defendant Brown violated, include, but are not limited to:

        a.      NMSA 1978, § 66-7-301, generally (regulation of speed);
        b.      NMSA 1978, § 66-7-301(B)(2)(duty of all persons to use due care);
        c.      NMSA 1978, § 66-7-7-104(duty to obey traffic signals); and
        d.      Other statutes and regulations in effect on December 12, 2012, the violation of which by Defendant Brown will be proven at trial.

11.     Defendant Brown violations of the statutes and ordinances constitute negligence *per se*.

12.     As a direct and proximate result of Defendant Brown's negligent acts and omissions, as set forth herein, Plaintiff sustained damages, including: bodily injury, pain and suffering, medical expenses, lost enjoyment of life, severe emotional distress, and/or other damages to be proven at trial.

13.     Defendant Farmington is liable for damages to Plaintiff pursuant to NMSA 1978, § 41-4-4, *et seq.*, for all damages awarded for the wrongful acts and omissions of its employees, including Defendant Brown.

### COUNT 3 - UNLAWFUL SEIZURE AND/OR EXCESSIVE FORCE CONTRARY TO THE FOURTH AND FOURTEENT AMENDMENTS TO THE UNITED STATES CONSTITUTION (Pursuant to 42 U.S.C. § 1983)

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

14.     At all times relevant to this Complaint, Plaintiff had a Fourth Amendment and/or Fourteenth Amendment right to be free from unlawful seizure.

15.     At all times relevant to this Complaint, Plaintiff had a Fourth Amendment and/or Fourteenth Amendment right to be free from the use of excessive and unnecessary use of force against Plaintiff.

16.     There is a long line of case law permitting police officers to drive in excess of the speed limit and/or ignore traffic signals, including passing through red lights, when those officers are responding to a police call, chasing a fleeing suspect, or the officer's speeding and/or ignoring of traffic signals is required in order to complete a legitimate function that the officer has been tasked with performing.

17.     Upon information and belief, in this case, however, there is no dispute that Defendant Brown **was not** responding to an emergency call or otherwise engaged in police activity that required Defendant Brown to drive twenty miles in excess of the posted speed limit and/or drive through a red light.

18.     Consequently, Defendant Brown's dangerous and unlawful decision to drive in excess of the speed limit, without looking ahead of his vehicle, and/or running the red light violated Plaintiff's right to be free from unlawful seizure and/or free from the use of excessive force.

19.     A motor vehicle has long been recognized to be a potential deadly weapon.

20.     In this case, upon information and belief, Defendant Brown pointed his speeding motor vehicle toward an intersection that he assumed had a green light—without looking to see if his light was green and/or without looking where he was driving at all.

21.     Defendant Brown's conduct is akin to indiscriminately firing a deadly weapon into a group of people without a legitimate reason.

22.     Prior to engaging in his unlawful actions, including the use of unnecessary force against a citizen who posed no threat to himself or the public, Defendant Brown had a duty to critically evaluate the facts on which they would rely to support his planned actions and to determine if such actions were objectively reasonable and in good faith under the totality of the circumstances.

23.     Defendant Brown failed to exercise their duty in these regards and their actions were not objectively reasonable. Defendant Brown's actions during incident described above constituted excessive and unreasonable force.

24.     Based upon the fact that Defendant Brown was not performing a legitimate police functioning that required him to engage in the aforementioned reckless use of force, Defendant

Brown is not entitled to qualified immunity.

25.    Defendant Brown's conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

26.    As a direct and proximate result of the violation of his civil rights, Plaintiff suffered damages including: bodily injury, pain and suffering, medical expenses, lost enjoyment of life, severe emotional distress, and/or other damages to be proven at trial.

27.    Defendant Brown's conduct was deliberately indifferent to the rights of the public including Plaintiff and the rights of Plaintiff were clearly established as of December 12, 2012.

28.    Defendant Brown's actions were willful, wonton, malicious, intentional, grossly indifferent and perpetrated with reckless indifference to the rights of Plaintiff.

29.    As a result, Plaintiff is entitled to an award of punitive and/or exemplary damages against Defendant Brown.

**COUNT 4 - MALICIOUS PROSECUTION OF PLAINTIFF BY
DEFENDANT COX AND/OR DEFENDANT BROWN
(Pursuant to 42 U.S.C. § 1983)**

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

30.    Defendant Cox caused Plaintiff to be charged with violating NMSA 1978, § 66-8-101(C), Great Bodily Harm by Vehicle.

31.    NMSA 1978, § 66-8-101, holds that: "A person who commits homicide by vehicle or great bodily harm by vehicle while under the influence of intoxicating liquor or while under the influence of any drug or while violating Section 66-8-113 NMSA 1978 is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978, provided that violation of speeding laws as set forth in the Motor Vehicle Code [66-1-1 NMSA

Upon information and belief there was no probable cause to believe that Plaintiff caused the harm resulting from the accident.

32.     In the absence of probable cause, charging Plaintiff with this violation of criminal law violated the rights provided to him under the Fourth and Fourteenth Amendments to the Constitution of the United States.

33.     In the alternative, Defendant Brown Lied to his Fellow Officers in order to ensure that those Officers would Initiate the Prosecution of Plaintiff and thereby Cover-up the fact that Defendant Brown was Culpable in the Collision. As Part of the "Prosecution Team" this lie is Actionable.

34.     Upon information and belief, Defendant Cox may claim that he relied upon information provided by Defendant Brown in securing the arrest warrant that charged Plaintiff with causing injury as a result of operating a vehicle while impaired.

35.     Should such a claim be made and substantiated, Defendant Cox still failed to perform a sufficient investigation to justify charging Plaintiff with Great Bodily Harm by Vehicle.

36.     There wasn't a sufficient basis for Defendant Cox to believe that probable cause existed to charge Defendant for Great Bodily Harm by Vehicle.

37.     Plaintiff was not convicted of Great Bodily Harm by Vehicle.

38.     Instead, Defendant plead guilty and was sentenced for Driving while Under the Influence of alcohol—first offense.

39.     This action does not constitute an attempt by Plaintiff to collaterally attach his conviction—Plaintiff does not challenge the validity of his convictions.

40.     Plaintiff does contend that charging him with causing the harm that his friend suffered when, in fact and upon information and belief, a speeding, unaware Defendant Brown ran

a red light and collided with Plaintiff, rather than the other way around, was unlawful.

41.     As a direct and proximate result of the violation of his civil rights by Defendants Cox and/or Brown, Plaintiff suffered damages including: severe emotional distress, humiliation, and embarrassment, incurring attorney fees, court costs and/or other damages to be proven at trial.

### COUNT 5 - MUNICIPAL LIABILITY (CUSTOM AND POLICY)
### Defendant Farmington (Pursuant to 42 U.S.C. § 1983)

Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

42.     The acts and omissions in violation of Plaintiff's rights by Defendant Brown and/or Defendant Cox were perpetrated pursuant to the custom and policy of Farmington.

43.     Defendant Farmington either maintains an official policy of permitting its officers to illegally arrest and detain people unlawfully and/or permitting its officers to use excessive force against those citizens or, in the alternative, maintains a *de facto* policy of ignoring such actions by Defendant Brown and/or Defendant Cox and other Farmington Police Department officers.

44.     Defendant Farmington's knowledge of the illegal actions of Defendant Brown and/or Defendant Cox, as described above, can be inferred by the obviousness of the facts. Simply put, with numerous police employees on the scene of this and other similar incidents, it is not possible for Defendant Brown and/or Defendant Cox and others to have acted without the knowledge and permission of the City.

45.     In addition, upon information and belief, there are several examples of Defendant Farmington's policy of allowing its police officers to prosecute citizens for crimes that those citizens did not commit—or to prosecute citizens for more serious crimes than those citizens committed—in order to prevent the public from discovering wrongdoing perpetrated by Defendant's Farmington's police officers and/or agents and/or employees.

46.     Defendant Farmington was deliberately indifferent both to the rights of Plaintiff and to other citizens of Farmington.

47.     The City's policies, procedures, and/or customs, either official or *de facto*, were a moving force behind the illegal acts perpetrated by Defendant Brown and/or Defendant Cox.

### COUNT 6 - MUNICIPAL LIABILITY (FAILURE TO TRAIN AND SUPERVISE) Defendant Farmington (Pursuant to 42 U.S.C. § 1983 )

Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

48.     The acts and omissions in violation of Plaintiff's rights by Defendants Brown and/or Cox were perpetrated pursuant to the custom and policy of Farmington.

49.     Defendant Farmington failed to train Defendant Brown and/or Defendant Cox and/or failed to supervise Defendant Brown and/or Defendant Cox regarding the circumstances under which they could a) lawfully drive a motor vehicle substantially in excess of the posted speed limit and/or through red lights, b) detain citizens, including by using their police car to effect the detention and b) lawfully use force against citizens.

50.     Farmington's failure to train and/or supervise Defendant Brown and/or Defendant Cox regarding their illegal actions against Plaintiffs and others, as well as the similar illegal actions perpetrated by other Farmington Police Department officers—in a pattern that dates back for more than a decade—is well known to the citizens of Farmington and/or can be inferred by the obviousness of the facts.

51.     Defendant Farmington was deliberately indifferent to the rights of Plaintiff and other citizens of Farmington, NM.

52.     Defendant Farmington's failure to train and supervise Defendant Brown and/or

Defendant Cox was a moving force behind the illegal acts perpetrated by Defendant Brown and/or Defendant Cox.

## COUNT 7 - BATTERY OF PLAINTIFF BY DEFENDANT BROWN
### (Pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*.)

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

53.     During the events described above, Defendant Brown drove a vehicle that weighed several thousand pounds into the vehicle being driven by Plaintiff.

54.     Defendant Brown nearly killed Plaintiff's passenger and seriously injured Plaintiff.

55.     Defendant Brown's acts constitute the tort of battery.

56.     The battery or batteries perpetrated against Plaintiff proximately caused Plaintiff to suffer damages, including: bodily injury, pain and suffering, medical expenses, lost enjoyment of life, severe emotional distress, and/or other damages to be proven at trial.

## COUNT 8 - FAILURE TO MAINTAIN OR REPAIR DANGEROUS
### INTERSECTION BY DEFENDANT ANGLIN
### (Pursuant to the New Mexico Tort Claims Act)

Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

57.     At the time of the collision, it was the duty of Defendant Anglin to maintain the traffic lights on Main Street and Butler Ave.

58.     Upon information and belief, Defendant Anglin knew or should have known of the need to correct the dangerous condition pursuant to his duty to maintain the intersection.

59.     As a direct and proximate result of Defendant Anglin's negligent acts and omissions, as set forth herein, Plaintiff sustained damages, including: bodily injury, pain and suffering, medical expenses, lost enjoyment of life, severe emotional distress, and/or other damages to be proven at

trial.

## DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court accept his Complaint and order appropriate preliminary hearings on all issues susceptible to such hearings. Plaintiff further prays that the Court, after all preliminary matters are resolved and full discovery has been had, order a trial by jury of his peers on all matters upon which he is entitled to such a jury.

Plaintiff further prays that following trial, this Court grant the following relief:

A.     Award compensatory damages jointly and severally against all Defendants in an amount to be determined by the jury at trial;

B.     Award punitive and exemplary damages against Defendant Brown and Defendant Cox, in a separate amount to be determined by the jury at trial pursuant to 42 U.S.C. § 1983;

C.     Award pre- and post-judgment interest on all monetary damages awarded pursuant to 42 U.S.C. § 1983 in an amount to be fixed by the Court;

D.     Award post-judgment interest on all monetary damages awarded pursuant to the New Mexico Tort Claims Act in an amount to be fixed by the Court;

E.     Award Plaintiff his costs in bringing this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.     Award other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,
**AEQUITAS LAW**

"Electronically Filed"
By:   /s/ Anna C. Martinez
Attorney for Plaintiff
P.O. Box 25304
Farmington, NM 87125
(505) 750-8005
anna@aequitas.pro