IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CODY OLACHEA,

    Plaintiff,

v.     NO. 1:14-CV-01126-WJ-CG

CITY OF FARMINGTON, NEW MEXICO,
TYLER W. BROWN, JASON COX, and
DANIEL ANGLIN,

    Defendants.

### DEFENDANTS CITY OF FARMINGTON, TYLER W. BROWN AND DANIEL ANGLIN'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants City of Farmington, Tyler W. Brown and Daniel Anglin ("the Farmington Defendants"), by and through their attorneys of record, Miller Stratvert P.A. (Virginia Anderman), file herewith their Reply Brief in support of their Motion to Dismiss all claims raised in Plaintiff's Complaint.

**I.    Plaintiff's Request to Amend His Complaint to Plead a Claim Under the Fourteenth Amendment Should be Denied as Futile**

Motions to amend need not be granted where they are futile. A court should deny leave to amend under Rule 15 where the proposed "amendment would be futile." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999). An amendment is "futile" if the pleading "as amended, would be subject to dismissal. *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992). In this case Plaintiff wishes to amend not the facts, but simply the legal theory it seeks to advance under § 1983. Defendants will show that, under the facts as pled, Plaintiff's state tort remedies are adequate and the actions of Officer Brown do not rise to the level of a violation of substantive due process as a matter of law.

Plaintiff has conceded in his Response that he has no viable claim for violation of his constitutional rights under the Fourth Amendment, as this automobile accident between Plaintiff and Officer Brown did not result in a "seizure" as that term is construed under the Fourth Amendment. Rather, Plaintiff now asks the Court to allow him to amend his complaint to plead a substantive due process claim against Officer Brown, suggesting that this auto accident rises to the level of the "shocks the conscience" standard under the substantive due process protections of the Fourteenth Amendment. As support for this proposition, Plaintiff cites the United States Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

*Lewis* was a pursuit case in which a county sheriff's deputy attempted to stop a motorcycle. During the chase, the motorcycle tipped over and the officer's car skidded into the plaintiff causing his death. *Id*. at 836. The Supreme Court declined to find a Fourth Amendment violation under these facts, holding that there was no search or seizure. *Id*. at 843. The Court then considered whether the allegations of the complaint were sufficient to state a claim for violation of the decedent's substantive due process rights. The Court found they did not. *Id*. at 855. In *Lewis*, the Court made several observations about the Fourteenth Amendment and its substantive due process protections. One is that the due process clause was intended to prevent government officials from abusing their power or employing it as an instrument of oppression (citations omitted). *Id.* at 840. The Court held that it would review a claim under the substantive due process clause only if there were no other more definite provision of the Constitution that could be applicable. *Id*. at 842. The Court also noted that it has always been "reluctant to expand the concept of substantive due process." *Id.* at 842, quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992). The Court also quotes *Collins* for the principle that "only the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense." *Lewis* at 846

2

quoting Collins at 129. The Court also relied on *Paul v. Davis*, 424 U.S. 693, 701 (1976) for the principle that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Lewis* at 848.

In *Lewis*, the Court commented that the official conduct "most likely to rise to the conscience-shocking level" is the "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849. The Court characterized acts that may be "conscience-shocking" as "brutal," "oppressive" and "malicious" and noted that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense." *Id.* at 846.

The Court further noted that "liability for deliberate indifference…rests upon the luxury enjoyed by [officials] of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Id*. at 854. The Court did not find the alleged level of deliberate indifference as equivalent to one of reckless disregard for life. *Id*.

Rather fortuitously, and perhaps coincidentally, the parameters of *Lewis* have been explored this very month in an opinion issued by the Tenth Circuit. In *Browder v. City of Albuquerque*, ____ F.3d ____, 2015 WL 3462180 (10th Cir. June 2, 2015.), a police officer who was off duty following his shift at the Albuquerque Police Department and "on no one's business but his own" got into his police cruiser, flipped on his emergency lights and drove off at about 66 mph for 8.8 miles. At the eleventh intersection he passed through, the deputy ran the red light and the result was a terrible crash where one child died and another was seriously injured. *Id.* at *1.

Under these facts, the Tenth Circuit was asked to consider whether the claim as pled was adequate to satisfy the standards of substantive due process and, if so, whether the officer was

entitled to qualified immunity under that doctrine as applied to claims brought under 42 U.S.C. § 1983. *Id.* at *2. The Tenth Circuit applied the *Lewis* decision to these facts to determine whether the action in question bore a reasonable justification in the service of a legitimate governmental objective or whether it was so egregious and arbitrary as to shock the conscience. *Id.* The court also raised the related question of whether the existence of a state tort remedy provides all the process that is due. *Id.*

The Tenth Circuit was guided by the Supreme Court's use in *Lewis* of history and precedent in analyzing the nature of government overreaching involved in executive misconduct as well as the *mens rea* of the actor, noting that "[n]egligence toward a fundamental right, we are told, will never suffice to suggest the sort of caprice that rises to the level of constitutional concern." *Id.* at *3.

Looking at the facts in the *Browder* case, the Tenth Circuit found, at least as alleged in the complaint, the deputy's actions appeared to have been performed capriciously and without good reason when he used his official squad car while off duty, activated its emergency lights and proceeded to speed through surface streets at more than 60 mph over 8.8 miles through 11 intersections and at least one red light "all for his personal pleasure, on no government business of any kind." *Id.* The court also noted that there is a New Mexico statute that deems it an abuse for officers to employ their emergency lights or sirens for their own business, citing N.M. Stat. Ann. § 66-8-843. *Id.*

In finding that a potential Fourteenth amendment violation existed under these facts, the Tenth Circuit found the following allegations compelling: that the deputy was not pursuing any official business at all and that he had activated his emergency lights without being on official business. The Court reasoned that "officers who go drag racing down main street on their own

time are not immunized for accidents they cause merely by flipping on their lights or sirens. By using his emergency lights on his own time rather than on the public's business, it was possible to conclude, decided the Tenth Circuit, that the officer's conduct could amount to an unconstitutional abuse of power, "a demand that others get out of his way so he might pursue his personal business before they might pursue theirs." *Id*. at *5.

However, another important issue was highlighted by the court that is very important in the recent case. The Tenth Circuit found that the deputy had chosen not to pursue a defense that was "perhaps the most significant," namely whether ***Parratt v. Taylor***, 451 U.S. 527 (1981) requires a plaintiff to show that state law supplies no adequate remedy before a substantive due process violation can lie. *Id*. at *4. The ***Browder*** court thus reserved for another day the question of whether ***Parratt*** and the adequacy of a state tort remedy applies to substantive due process claims, "the very course the Supreme Court charted when the defendant in ***Lewis*** similarly failed to raise a ***Parratt*** argument." *Id*., citing ***Lewis***, 523 U.S. at 840, n. 4.

In the case now before this Court, an adequate state tort remedy does exist and has actually been invoked by Plaintiff's passenger, Deseree Trujillo, who currently has pending in state district court a claim brought under the New Mexico Tort Claims Act seeking compensation for the injuries she suffered in the same accident which is the subject of the federal court lawsuit. The state court action names both the City of Farmington and Tyler Brown as defendants. This Court may take judicial notice of the state court case entitled ***"Deseree Trujillo v. Tyler W. Brown, The City of Farmington Police Department and The City of Farmington"***, Cause No. D-1116-CV-2013-01266 (Complaint attached as Exhibit A hereto). In that action, Defendants have not challenged the waiver of immunity granted by the Tort Claims Act. (See Answer

attached as Exhibit B hereto).  Now that Plaintiff has, without notice and at the final hour,[1] elected to bring suit even though he pled guilty to driving while intoxicated, there is no reason why Plaintiff cannot avail himself of the state remedies available in this traditional negligence cause of action.[2]

An important point of contrast between the facts in ***Browder*** and the facts in this case is that, even on the face of Plaintiff's complaint, one sees that there is an issue of comparative fault that can only be reasonably addressed by state tort remedies.  New Mexico is a pure comparative negligence state and allows a defendant to raise as a defense the comparative fault of the plaintiff and others.  These defenses have in fact been asserted.  (See Answer, Exhibit B hereto).  State law governs these types of claims and specifically allows a defendant in the position of Officer Brown to raise the negligence of others as a defense.[3]

Under the facts of this case, even if one resolves all reasonable inferences of the facts alleged in the complaint in favor of the Plaintiff, the claim under the Fourteenth Amendment must fail either because there is a meaningful and adequate state tort remedy or, alternatively, because the facts in this case do not rise to the level required under the "shock the consciousness" standard of the Fourteenth Amendment.  The following allegations are significant to this latter analysis:

- At all times material to this complaint, Officer Brown was a law enforcement officer acting within the course and scope of his employment and under color of

---

[1] Plaintiff failed to give prior notice to the City that he was contemplating filing an action on his own behalf, so the City was unaware of his intent to do so.
[2] In fact, Plaintiff is likely to be considered an indispensable party to the state law comparative negligence action under the principles of NMRA 1-019.
[3] Officer Brown and the City may choose to bring a counterclaim against Plaintiff, the City for damages to its vehicle, and Brown for his own injuries.

state law within the meaning of § 41-4-12 (waiver of immunity for law enforcement officers).  Complaint, ¶ 8.

- Plaintiff specifically alleges that Officer Brown was negligent in the operation of a motor vehicle and invokes the waiver of immunity contained at § 41-4-5 which allows recovery for damages resulting from the operation of a motor vehicle caused by the negligence of public employees while acting within the scope of their duties.  Complaint, ¶ 9.

- Plaintiff claims that another City employee, Defendant Daniel Anglin, was also (comparatively) negligent in maintaining the traffic controls at the intersection in which Plaintiff was injured.  Complaint, ¶ 12.

- The accident in question occurred at approximately 3:42 a.m. on December 12, 2012, i.e., in the early hours of the morning when one would expect little traffic on the city streets.  Complaint, ¶ 22.

- As Plaintiff entered the intersection of Butler Avenue and East Main Street his vehicle was suddenly struck with tremendous force on the passenger side by a police vehicle being driven by Officer Brown.  Complaint, ¶¶ 24 and 25.

- At the time Officer Brown entered the intersection, he was speeding, traveling approximately 51 mph in a 30 mph zone.[4]  Complaint, ¶ 28.

- Officer Brown was on duty at the time of the accident, although it is alleged that he was not at the moment of the accident responding to an emergency call.  Complaint, ¶¶ 30, 31.

- Officer Brown had not activated his lights or sirens.  Complaint, ¶ 32.

---

[4] The evidence will show that the actual speed limit on Main Street, including on the date of this accident, is 35 mph, not 30 mph.

- Officer Brown never took any evasive action to avoid the collision because he was not looking where he was going. Complaint, ¶¶ 48-51.

- As Officer Brown entered the intersection, the traffic light on East Main Street was in rest mode, meaning that the light remains green until a vehicle approaches traveling either north or south on Butler which then triggers a sensor which turns the light from green to red in approximately 3 to 5.5 seconds. Complaint, ¶¶ 58, 59.

- Plaintiff claims (although this point is hotly contested) that the traffic signal in the direction that Officer Brown was traveling was actually red because a pedestrian had pressed the crosswalk button on Butler Avenue. Complaint, ¶¶ 62 and 63.[5]

- Officer Brown and other Farmington police officers knew that the light at the intersection of Butler and Main was to remain green for all east and westbound traffic. Complaint, ¶¶ 71, 72.

- Officer Brown assumed the light would be green in his direction of travel and therefore was not looking forward or paying attention before he collided with the Plaintiff. Complaint, ¶ 77.

- Plaintiff sued Officer Brown for negligence and negligence *per se* alleging that he breached his duty by driving too fast for conditions and in excess of the posted speed limit, failing to pay attention to traffic, failing to stop at a red light, failing to keep a proper lookout and failing to take reasonable steps to avoid the collision. Plaintiff alleges that this conduct constituted negligence. Complaint, ¶¶ 85, 88.

---

[5] There is no record of any pedestrian or witnesses to the crash as reported to the Farmington Police Department or the San Juan County Sheriff's Department, who prepared the police report relating to the accident.

- Plaintiff was charged with great bodily harm by vehicle. He pled guilty and was sentenced to driving under the influence of alcohol. Complaint, ¶¶ 115, 116.
- Plaintiff claims that charging him with great bodily harm by vehicle (despite his having pled guilty to driving while under the influence of alcohol) constituted malicious prosecution.

The significance of these facts comports with what the Farmington Defendants herein have argued above; even Plaintiff recognizes that the case is properly deemed as one for negligence in the operation of a motor vehicle and that there are issues of comparative fault that must be determined Plaintiff having admitted that he Plaintiff pled guilty to driving while intoxicated at the time of the accident. In *Browder*, there is nothing to indicate that the injured parties were in any way at fault. Thus, the issues of comparative fault further illustrate why the proper remedy for this accident, unlike the one in *Browder*, lies with state tort remedies.

Also, the Tenth Circuit was in large part persuaded that the officer had abused his official authority by the fact that the officer had activated his lights and was driving at high speed for some time and at a great distance before the accident even though he was not on duty and therefore had no justifiable reason whatsoever to be operating his vehicle in such a reckless and abusive manner. By activating his lights, he relied on but abused the very authority that had been vested in him as a police officer without any justification whatsoever. That fact supplies in *Browder* the "color of state law" essential to a § 1983 claim even though the officer was not technically on duty at the time of the accident. Here, unlike the officer in *Browder*, Plaintiff alleges that Officer Brown was acting in the course and scope of his employment and that he was negligent in operating his motor vehicle. Plaintiff pleads that Officer Brown had reason to believe that the light would be green based on his knowledge of the intersection which could

9

have led to him paying less attention at that time of night than otherwise. Thus, the difference between the facts in ***Browder*** and the present case are both substantively and procedurally different and necessarily lead to a different result. On this basis, the federal claims against Officer Brown should be dismissed.

Likewise, where there is no federal claim against a government actor, there can be no claim for municipal liability under 42 U.S.C. § 1983. ***See City of Los Angeles v. Heller***, 475 U.S. 796, 799 (1986). Once the federal claims have been dismissed with prejudice for the reasons shown here, there is no federal jurisdiction to support the remaining state law claims. Thus, the state law claims should be dismissed without prejudice. ***Brooks v. Gaenzle***, 614 F.3d 1213, 1229 (10th Cir. 2010) (once federal claims are dismissed leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.)

**II.     Plaintiff Cannot Show a Viable Claim for Malicious Prosecution under § 1983**

Section II of Plaintiff's Response Brief addresses a civil rights claim against Deputy Jason Cox, who is not an employee of the City of Farmington, but who, like Officer Brown, was sued under § 1983 under a malicious prosecution theory. The Farmington Defendants demonstrated in their original memorandum brief why such a claim could not lie against Officer Brown as a matter of law based on Plaintiff having pled guilty to one of the charges for which he was prosecuted and Plaintiff has not offered any meaningful authority that rebuts the previous analysis that would support a constitutional claim for malicious prosecution. Presumably that analysis would apply equally to Officer Brown and Deputy Cox, because the charges against Plaintiff were not resolved in his favor as he pled guilty to driving while intoxicated which forms the same basis for the arrest as the charge of great bodily harm by vehicle. Thus, as argued in the

Farmington Defendants' memorandum brief with regard to the malicious prosecution claim against Officer Brown, and by the same logic, against Jason Cox, these facts also fail to state a claim.

### III.    Plaintiff's Remaining State Law Claims Should be Adjudicated in State Court

If the Court, despite the arguments set forth above, declines to dismiss the federal cause of action, the Farmington Defendants will address the issues raised with regard to the state tort claims.  The issue the Farmington Defendants raised was that Plaintiff's filing of his case on the two-year anniversary date was untimely under the Tort Claims Act's requirement that the claim must be brought "within" two- years from the date of the incident.

However, the Farmington Defendants must agree with Plaintiff that they misconstrued the ***Dutton*** case.  The Farmington Defendants cited that case for the proposition that the procedure for determining the period in which causes of action shall be filed is a procedural question to be calculated by court rules.  However, in rereading ***Dutton***, the Farmington Defendants' counsel would agree that the case appears to accept that a filing on the second anniversary date of the incident was adequate to satisfy the rule, as the ***Dutton*** plaintiff was permitted to file on the Monday following the anniversary date, which fell on a weekend.  On this basis, the Farmington Defendants will withdraw their challenge to the statute of limitations issue, while holding in abeyance the other defenses that they may be entitled to invoke under the New Mexico Tort Claims Act.  The Farmington Defendants are also willing to withdraw their request for fees in connection with the motion to dismiss, given Plaintiff's concession that he was wrong in relying on the Fourth Amendment for his claim under 42 U.S.C. § 1983 and that he instead is seeking relief under the Fourteenth Amendment, for which there is some precedent, although distinguishable under the facts of this case.

## IV.     Conclusion

WHEREFORE, the Farmington Defendants request that the Court find that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 and that any attempt to amend his Complaint to convert his claim from a search and seizure violation of the Fourth Amendment to a substantive due process violation under the Fourteenth Amendment would be futile.  The Farmington Defendants would accordingly request that the claims against the governmental entity be likewise dismissed with prejudice.  The Court, after having dismissed all of Plaintiff's claims arising under federal law claims, should then decline to exercise its jurisdiction over Plaintiff's state law claims and should dismiss those claims without prejudice.

    Respectfully submitted,

    MILLER STRATVERT P.A.

    By  */s/ Virginia Anderman*
       Virginia Anderman
       William T. Denning
       Attorneys for the Farmington Defendants
       P. O. Box 25687
       Albuquerque, NM 87125-0687
       Telephone:  (505) 842-1950
       Facsimile:  (505) 243-4408

I hereby certify that on the 16th day of June, 2015
I filed the foregoing electronically through the CM/ECF
system, which caused the following parties or counsel
to be served by electronic means, as more fully reflected
on the Notice of Electronic Filing:

**ATTORNEYS FOR PLAINTIFF:**
Anna C. Martinez
Aequitas Law
P. O. Box 25304
Farmington, NM 87125
Telephone:  505-750-8005
Email:  anna@aequitas.pro

**ATTORNEYS FOR CO-DEFENDANT JASON COX:**
Amy L. Glasser
Potts & Associates
6001 Indian School Rd. NE, #100
Albuquerque, NM 87110-4139
Telephone:  505-889-5252
Fax:  877-365-8043
Amy L. Glasser  aglasser@travelers.com


*/s/ Virginia Anderman*
Virginia Anderman


\\Abq-tamarack\ProData\013612-047531\Pleadings\2749695.doc